1   Sean Riordan (CA Bar No. 255752)
AMERICAN CIVIL LIBERTIES UNION
2   FOUNDATION OF NORTHERN CALIFORNIA
500 Capitol Mall, Suite 2350
3   Sacramento, CA 95814
T: 916.620.9705
4   sriordan@aclunc.org

5   Matthew Cagle (CA Bar No. 286101)
Christine Sun (CA Bar No. 218701)
6   AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
7   39 Drumm Street
San Francisco, CA 94111
8   T: 415.343.0758
mcagle@aclunc.org
9   csun@aclunc.org

10   John G. Heller (CA Bar No. 129901)
Si Eun Amber Lee (CA Bar No. 197329)
11   ROGERS JOSEPH O'DONNELL, PC
311 California Street, 10th Floor
12   San Francisco, CA 94104
T: 415.956.2828
13   jheller@rjo.com
slee@rjo.com
14
Attorneys for Plaintiffs Tanya Faison and Sonia Lewis

15

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

16

17

| | |
|---|---|
| TANYA FAISON and SONIA LEWIS, | Case No. ___ |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| v. | |
| SCOTT R. JONES, individually and as Sheriff of Sacramento County, | |
| Defendant. | |

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs Tanya Faison and Sonia Lewis (collectively "Plaintiffs") bring this complaint

2    against Sacramento County Sheriff Scott Jones ("Defendant"), and allege the following:

3
## INTRODUCTION

4       1.     This case is about the right to criticize a public official in an online public forum

5    without being censored.  Plaintiffs are the leaders of the Black Lives Matter Sacramento chapter,

6    a group that has publicly and repeatedly criticized Sheriff Jones and the Sacramento Sheriff's

7    Department.  Sheriff Jones deleted Plaintiffs' critical comments from his official "Sheriff Scott

8    Jones" Facebook Page and then banned them from the Page.  In so doing, Sheriff Jones censored

9    Plaintiffs' voices during a critical time of public debate in Sacramento about whether and how

10    his Department should be subjected to outside oversight.

11       2.     Plaintiffs bring this freedom of speech case under the First Amendment to the

12    U.S. Constitution, 42 U.S.C. § 1983, and Article 1, Section 2(a) of the California Constitution,

13    seeking declaratory and injunctive relief and damages.

14       3.     The internet is among the most important places for the exchange of views,

15    enabling a person "to become a town crier with a voice that resonates farther than it could from

16    any soapbox." *Reno v. American Civil Liberties Union*, 117 S. Ct. 2329, 2344 (1997).  Social

17    media like Facebook are the "vast democratic forums of the Internet"—modern public squares

18    where Americans can debate politics, religion, and other social issues. *Reno*, 117 S. Ct. at 2343.

19    Facebook and other social media provide "perhaps the most powerful mechanisms available to a

20    private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730,

21    1737 (2017).  "[S]ocial media users employ these websites to engage in a wide array of protected

22    First Amendment activity on topics 'as diverse as human thought.'" *Id*. at 1735–36 (quoting

23    *Reno*, 117 S. Ct. at 2329).  These platforms are "revolution[ary]" in their ability to increase civic

24    engagement with elected officials through the instantaneous and direct communication

25    opportunities afforded by their features. *Id*. at 1736.  The direct communication between

26    constituents and public officials on Facebook is analogous to speech that, until recently, was only

27    attainable for people who were physically gathered in the same space, such as in a public park or

28    town hall. *See* Lyrissa Lidsky, Public Forum 2.0, 91 B.U. L. REV. 1975, 2005 (2011).

4.      Through his Page, Sheriff Jones has established an important forum for the expression of views and opinions about his office, his Department, and law enforcement policies. Sheriff Jones frequently posts on the Page about the Department's official business, including incidents involving Sheriff's deputies, the Department's response to such incidents, the role of the Department in relation to elected bodies, and service projects.  Facebook users are entitled, unless prevented by Sheriff Jones, to comment on these posts or those of other speakers.  Any member of the public (including those without a Facebook account who, though unable to comment, can nonetheless view the Page) are thus able to review and consider the viewpoints— often competing—expressed on the Page.  Under governing law, the Sheriff Jones Facebook Page thus qualifies as a public forum under the First Amendment and the California constitution.

5.      In late October and early November 2018, each Plaintiff posted comments critical of Sheriff Jones on his Page under his posts discussing the oversight of his Department and Black Lives Matter Sacramento.  Sheriff Jones deleted Plaintiffs' comments from his Page and banned them from making any further comments.

6.      Sheriff Jones thereby impermissibly censored Plaintiffs based on the content of their speech, their viewpoint, and their identity.  By suppressing the voices of the leaders of Black Lives Matter Sacramento, Sheriff Jones has violated these Plaintiffs' constitutional rights.

7.      Plaintiffs respectfully request that the Court enter judgment declaring that Defendant's exclusion of Plaintiffs from the Page violates the First Amendment of the U.S. Constitution and Article 1, Section 2(a) of the California Constitution, enjoining Defendant from engaging in unlawful censorship of comments, mandating that Defendant restore Plaintiffs' posts and posting privileges, and awarding Plaintiffs damages and attorneys' fees and costs.

## THE PARTIES

8.      Plaintiff Tanya Faison is a resident of Sacramento, California, and the founder and co-lead of Black Lives Matter Sacramento (BLM-Sacramento), a chapter of the national organization, Black Lives Matter.  BLM-Sacramento is and has been a vocal critic of law enforcement treatment of Black people in and around Sacramento, including with respect to incidents that have resulted in shooting deaths.

9.   Plaintiff Sonia Lewis is a resident of Sacramento County, California, and is co-lead for BLM-Sacramento.

10.   Defendant Sheriff Scott R. Jones is the Sheriff of Sacramento County and, on information and belief, a resident of Sacramento County.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, because they arise under the Constitution and laws of the United States.

12.   This Court has subject matter jurisdiction over Plaintiffs' California state constitutional claims under 28 U.S.C. § 1367, because they substantially relate, both legally and factually, to the federal constitutional claims upon which original jurisdiction is premised.

13.   This Court has personal jurisdiction over the Defendant because he is a resident of California.

14.   This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-02 and 42 U.S.C. § 1983.

15.   Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is a resident of the district, and a substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTUAL ALLEGATIONS

### Relevant Features of the Facebook Social Media Platform

16.   **Facebook.** Facebook is a social media platform with approximately 2.27 billion monthly users worldwide, including approximately 214 million users in the United States.  The site allows users to upload content—including text, news articles, photos, and video.  It also permits other users to respond to, comment on and interact with others in relation to such content.

//

//

//

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

17.     **Profile**.  A profile is the home page of a Facebook account typically used by private individuals.  It is "a place on Facebook where you can share information about yourself, such as your interests, photos, videos, current city and hometown."[1]

18.     **Page.**  In contrast to a "profile," a Facebook "Page" is a way for "[b]usinesses, organizations and public figures" to "connect with their customers or fans."[2]

19.     **Posts.**  The content that a Facebook user shares with friends, followers or the public is called a "post."  Posts can be made by the owner of a profile or Page, or by other users who visit a profile or page.

20.     **Replying or commenting**.  Facebook users can respond to or comment on posts, unless not permitted to do so.  This is called "replying" or "commenting."  Replies appear immediately under the post to which they respond, thereby reflecting the interaction of ideas or viewpoints that the Facebook Page or profile is intended to foster.

21.     **Sharing.**  Facebook users can "share" another user's post, thereby publishing the post on such user's own profile or page.

22.     **Banning and deleting.**  An owner of a Facebook Page controls its content.  They may delete posts made by other users and may "ban" a user from posting on the Page.  A banned user remains able to view posts by the owner or other users on the Page, but is barred from commenting, posting, or otherwise contributing to the Page, and is thereby excluded from participation in the online dialogue or debate.

### The Sheriff Scott Jones Facebook Page

23.     Sheriff Jones maintains a Facebook Page under the name "Sheriff Scott Jones." The Page contains a profile photo of Sheriff Jones in uniform and features a banner photo of a Sacramento County Sheriff's Department cruiser.  It contains a "Public Figure" designation, and

---

[1] *See* Facebook, What's the difference between a profile, Page, and a group?, available at https://www.facebook.com/help/337881706729661?helpref=faq_content.

[2] *See* Facebook, *About: Pages*, available at https://www.facebook.com/help/282489752085908?helpref=faq_content.

1  is distinct from Jones's personal Facebook profile. The Sheriff Scott Jones Page has nearly

2  10,000 followers:



24      24.    The "About" section of the Sheriff Jones Facebook Page includes a "Biography"

25  that highlights Sheriff Jones' role, goals and initiatives as "the 36th Sheriff of Sacramento

26  County":

27  / / /

28  / / /

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

ⓘ Biography

For his entire adult life, Sheriff Scott R. Jones has sworn
an oath to protect the citizens of Sacramento County.
Through his service in the Sacramento County Sheriff's
Department, he strives to give a voice to voiceless,
stand up for what's right, and defend people who are
unable or unwilling to protect themselves.

Starting with the Sacramento County Sheriff's
Department in 1989, Sheriff Jones rose through the
ranks, earning the respect of his peers and the
community alike. First elected Sheriff by the people of
Sacramento County in 2010, Sheriff Jones was re-
elected unopposed to a second term in 2014. He serves
as the Chair of the Central California Intelligence
Committee and host of the Regional Terrorism Threat
Assessment Center.

As the 36th Sheriff of Sacramento County, Sheriff Jones
boasts a stellar record of accomplishments. He helped
lead the Department out of the worst financial crisis of
its history. Through his leadership, he implemented
significant initiatives including creating a multi-
jurisdictional Impact Division, which uses active
intelligence to fight gangs and remove gang leaders. He
also founded and established the Department's first
Community Relations Unit as well as the first Youth
Services Unit, responsible for engaging thousands of
children and young adults in activities and programs to
keep them safe and off the streets. Considered one of
the foremost experts on law enforcement in California,
Sheriff Jones has been invited to testify before the
United States Congress on multiple occasions to provide
boots-on-the-ground insight into the many issues facing
our communities. In addition, Sheriff Jones regularly
meets with national and state leaders, and has spoken
on law enforcement issues for national and statewide
news outlets.

25.     The Sheriff Scott Jones Facebook Page features frequent posts by Sheriff Jones

discussing his Department's activities and encouraging support from constituents.  On January 9,

2019, for example, Sheriff Jones posted information about the swearing in for his third term,

including an image of the Sheriff's "oath of office."  As another example, on October 27, 2018,

Sheriff Jones commented on the shooting at a Pittsburgh synagogue and included his

Department's official press release on that incident.

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

26.     Like other Facebook Pages, the Sheriff Jones Page is interactive. It provides a platform for constituents to voice their approval of the Department's policies and practices—and purportedly their critiques—along with an opportunity for Sheriff Jones to respond.



27.     In recent months, the Page has become a forum for debate over a controversy concerning the oversight of Sheriff Jones' Department.  The controversy began with the publication of a report by Sacramento County's Inspector General in August 2018 criticizing the Department over the fatal 2017 shooting of Mikel McIntyre by Sheriff's Deputies.  In response to the report, Sheriff Jones refused to grant the Inspector General access to departmental facilities.  This "lockout" became the subject of multiple meetings before the Sacramento County Board of Supervisors.  The issue has been reported and discussed in dozens of articles and columns in the Sacramento Bee and other sources of news.

/ / /

/ / /

28. In the context of this lockout, on October 31, 2018, Sheriff Jones posted an appeal for public support on his Facebook Page, warning that certain Sacramento County Supervisors would seek to place his Department under oversight of the Inspector General—which he claimed would thereby bring it under the "control" of BLM-Sacramento—and urging his supporters to contact members of the Board of Supervisors.



29. In response to this post, supporters and critics of Sheriff Jones posted dozens of comments on the Page.

30.     On November 7, 2018, Sheriff Jones posted a link to an op-ed he authored for the Sacramento Bee defending the Department's independence and arguing against outside oversight. In the text of that post, Sheriff Jones called on supporters to attend an upcoming public meeting of the Sacramento Board of Supervisors:



31.     In response to this post, supporters and critics of Sheriff Jones posted dozens of comments on the Page.

**Plaintiffs' Criticism of Sheriff Jones and His Department**

32.     Black Lives Matter describes itself as "a chapter-based, member-led organization whose mission is to build local power and to intervene in violence inflicted on Black

communities by the state and vigilantes."[3]  BLM-Sacramento describes itself as engaging in three key areas of activity: (1) fighting for people who are victims of police brutality and/or murder; (2) working to abolish the current systems that exist and replacing them with community, restorative, and transformative justice; and (3) bringing Black joy and healing into Black communities.

33.    In her role as the local BLM-Sacramento leader, Faison has been publicly critical of Sheriff Jones and his Department, particularly after several instances in which Black persons were fatally shot by Sheriff's Deputies.  In October 2016, for example, Faison organized a candlelight vigil in Sheriff Jones' neighborhood honoring the memory of Adriene Ludd, who was killed by Sheriff's Deputies on October 22, 2015.

34.    Lewis has similarly been vocal in her criticism of Sheriff Jones and his Department, particularly Jones's resistance to external oversight by the County's Inspector General.

35.    On June 28, 2017, BLM-Sacramento demanded the firing and prosecution of the deputies responsible for the fatal shootings of Black persons by Sheriff's Deputies. On July 10, Sheriff Jones responded with a letter to Faison, writing that "there are far more responsible, effective voices for the African American community here in Sacramento than you." On August 8, Faison convened a press conference to denounce Jones' reaction, stating "[Jones] doesn't get to tell black people who their leaders are."

36.    In September 2018, Sheriff Jones encouraged counter-protesters to support law enforcement at a protest organized by BLM-Sacramento.  Faison criticized Sheriff Jones's efforts, telling the Sacramento Bee that "[w]e are fighting so that [we] can live, and he just wants to be right. The only thing he should be doing is making changes in his department."[4]

37.    BLM-Sacramento has criticized Sheriff Jones throughout the public debate about his lockout of the Inspector General from the Department's facilities.  Faison spoke about the

---

[3] *About*, Black Lives Matter, https://blacklivesmatter.com/about/.

[4] Daniel Hunt, *Protest planned outside CA cops' convention; a counterprotest is encouraged by sheriff,* Sacramento Bee (Sept. 17, 2018), available at https://www.sacbee.com/news/local/article218580300.html.

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1  issue of Inspector General oversight of the Department at a Board of Supervisors meeting on

2  October 30, 2018.  At that meeting, she argued in favor of mandatory oversight, noting that

3  "[o]versight is oversight. It's not an option."  Faison further criticized Sheriff Jones, pointing out

4  that he claimed "he is the only person who can make systemic change.  That is just completely

5  offensive. We are the people, we have the power to make change as well.  You are the Board,

6  you have the power to make systemic change as well."[5]

7  **Sheriff Jones's Banning of Faison and Deletion of Posts**

8      38.    On November 5, 2018 at 3:41 p.m., Sheriff Jones posted on the Sheriff Jones

9  Facebook Page about his dispute with the Board of Supervisors regarding the Inspector General.

10  He urged supporters to attend a December 4 Board meeting and speak in support of him and the

11  Department.  Sheriff Jones included screenshots of two Facebook posts associated with Faison

12  that were posted years earlier—one from the BLM-Sacramento Page and another from Faison's

13  personal profile—and were critical of law enforcement.  (See image on next page.)

14  / / /
15  / / /
16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26
27
28

[5] Public Meeting, Sacramento Board of Supervisors, at 2:04:2 http://www.agendanet.saccounty.net/sirepub/mtgviewer.aspx?meetid=12258&doctype=agenda&itemid=415687.

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22      39.     That same day, Faison responded to Sheriff Jones by posting the following

23  comment on his Facebook Page, using her "Tanya Ikemba Faison" Facebook profile, one of two

24  that she maintains.  "I think it's creepy that you have saved screen shots from my page from

25  November 2015," she posted.  "You[r] concern of my abilities looks to be real. Thank you for

26  your confidence in me."

27
28

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

40.    Sheriff Jones reacted first by deleting Faison's comment, along with other critical comments she made on his Facebook Page.  Then, at around 4:45 p.m. on November 5, he banned Faison from the Page altogether.

41.    Later that night, at around 9:00 p.m., Faison used a second Facebook profile she maintains—her "Tanya Faison" profile—to post comments on Sheriff Jones's Page, including a condemnation of his deletion of her posts earlier that day:



42.    Sheriff Jones responded by deleting these comments, and by banning the Tanya Faison profile from his Page.

43.    As of the filing of this lawsuit, Faison remains banned from the Sheriff Jones Facebook Page, and thereby unable to comment, contribute or participate in any of the discussions and debates occurring on this forum.

## Sheriff Jones's Banning of Lewis and Deletion of Posts

44.    In his October 31, 2018, post on the Sheriff Scott Jones Page, Jones expressed concern that his Department might fall under the control of "[Supervisor] Phil Serna, [columnist] Marcos Breton, and Sacramento Black Lives Matter."  Using her "SoniBollonie Lewis" Facebook profile, Lewis commented on that post, expressing her view that Sheriff Jones was resisting external oversight of and accountability for the Department.  Lewis made similar comments in response to comments from supporters of Sheriff Jones.

45.     Sheriff Jones deleted Lewis's comments from the Sheriff Jones Facebook Page and banned Lewis from the Page.

46.      At some unknown point after Sheriff Jones banned Lewis from the Page but before January 7, 2019, Sheriff Jones unbanned Lewis.  However, at some other unknown point between January 7 and January 20, 2019, Sheriff Jones again banned Lewis from the Page.

47.     These actions represent one set of a series of incidents—often corresponding with a period of intense public controversy concerning law enforcement or the Department—in which Sheriff Jones has banned Lewis, only to later unban her, to prevent Lewis's timely input from being included in a robust public debate.

48.     On information and belief, Sheriff Jones, at a minimum, acted in reckless and callous disregard for Plaintiffs' rights, entitling them to punitive damages.

## FIRST CLAIM FOR RELIEF
(Violation of the First Amendment, 42 U.S.C. § 1983, and Article 1, Section 2(a))
(Censorship in a Public Forum)

49.     Plaintiffs reallege and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

50.     The Sheriff Jones Facebook Page constitutes a public forum under the United States and California Constitutions.

51.     At the time he banned Plaintiffs from the Sheriff Jones Facebook Page, and deleted their comments, Sheriff Jones was acting under color of state law.

52.     Sheriff Jones's deletion of Plaintiffs' comments, and his banning of them from the Sheriff Jones Facebook Page, was not content-neutral, nor narrowly tailored to serve important government interests, nor did it leave open ample alternative channels for communication of their messages.  For these and other reasons, his conduct infringed upon Plaintiffs' rights under the First Amendment and the California Constitutions.

53.     Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights and have suffered irreparable injury as a result of Defendant's conduct, which will continue unless and until enjoined by appropriate order of this court.  Plaintiffs are

also entitled to, at a minimum, nominal damages as compensation for the violation of their constitutional rights, as well as punitive damages.

## SECOND CLAIM FOR RELIEF
(Violation of the First Amendment, 42 U.S.C. § 1983, and Article 1, Section 2(a))
(Viewpoint Discrimination)

54.     Plaintiffs reallege and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

55.     Defendant banned Plaintiffs from the Sheriff Jones Facebook Page, and deleted their comments, because of the viewpoints they expressed on that Page and the viewpoints they have expressed as members of BLM-Sacramento.  Sheriff Jones' censorship and banning of Plaintiffs based on their viewpoints violated their right to freedom of expression under the United States and California Constitutions.

56.     Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights and have suffered irreparable injury as a result of Defendant's conduct, which will continue unless and until enjoined by appropriate order of this court.  Plaintiffs are also entitled to, at a minimum, nominal damages as compensation for the violation of their constitutional rights, as well as punitive damages.

## THIRD CLAIM FOR RELIEF
(Violation of the First Amendment, 42 U.S.C. § 1983, and Article 1, Section 2(a))
(Speaker-based Discrimination)

57.     Plaintiffs reallege and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

58.     Defendant banned Plaintiffs from the Sheriff Jones Facebook Page, and deleted their comments, because of their identities and affiliation with BLM-Sacramento, a group which publicly criticizes Sheriff Jones.  This speaker-based discrimination is impermissible under the United States and California Constitutions.  By engaging in this conduct, Defendant violated Plaintiffs' rights under both constitutions.

59.     Plaintiffs have no clear and adequate remedy at law for this violation of their constitutional rights and have suffered irreparable injury as a result of Defendant's conduct,

which will continue unless and until enjoined by appropriate order of this court.  Plaintiffs are also entitled to, at a minimum, nominal damages as compensation for the violation of their constitutional rights, as well as punitive damages.

## **FOURTH CLAIM FOR RELIEF**
(Declaratory Relief )

60.     Plaintiffs reallege and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

61.     There exists an actual, present and justiciable controversy between Plaintiffs and defendant concerning Plaintiffs' right to participate in public debate by posting, responding and commenting on the Sheriff Jones Facebook Page.

62.     This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate so that the parties may know the legal obligations that govern their present and future conduct.

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

(a)     Declaring that by banning Plaintiffs from the Sheriff Jones Facebook Page, and by deleting their posts, Defendant has violated Plaintiffs' rights under the First Amendment of the United States Constitution, 42 U.S.C. section 1983, and Article 1, Section 2(a) of the California Constitution;

(b)     Granting injunctive relief enjoining Defendant from engaging in unlawful censorship against Plaintiffs and others similarly situated by banning them on the Sheriff Jones Facebook Page based on the content or viewpoint of their posts, or because of their identities;

(c)     Granting injunctive relief mandating that Defendant "unban" Plaintiffs from the Sheriff Jones Facebook Page and restore their deleted posts, and enjoining him henceforth from banning them or deleting their posts;

(d)     Awarding Plaintiffs nominal damages of one dollar each;

(e)     Awarding Plaintiffs punitive damages;

(f)     Awarding Plaintiffs their reasonable attorney fees and costs; and

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1     (g)     Granting any additional relief as may be just and proper.

2

3

4                                          Respectfully submitted,

5   Dated:   January 30, 2019               /s/ Sean Riordan
                                            _____
6                                          Attorneys for Plaintiffs Tanya Faison and
                                           Sonia Lewis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.:  Unassigned   COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES